UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARINE TRAVELIFT, INC.,

        Plaintiff,

v.                                      Case No. 10-C-1046

MARINE LIFT SYSTEMS, INC.,

        Defendant.

**DECISION AND ORDER PARTIALLY GRANTING
MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Marine Travelift, Inc, (MTI) is a Wisconsin corporation that manufactures, sells and purchases marine hoist and industrial equipment. In 2007 MTI entered into a distributorship agreement with Defendant Marine Lift Systems, Inc. (MLS), a Florida corporation, under which MLS agreed to serve as a non-exclusive distributor of the full range of MTI products, accessories, and parts in a territory consisting of the State of Georgia and various counties in the State of Florida. On November 22, 2010, MTI commenced this diversity action against MLS for breach of the distributorship agreement, misappropriation of trade secrets and other confidential information, and unfair competition. In an amended complaint, MTI later added claims for tortious interference with contractual relations and unjust enrichment. In addition to damages, MTI seeks an accounting, a constructive trust, and declaratory and injunctive relief.

MLS answered MTI's Complaint denying liability and filed a Counterclaim in which it asserted two claims for breach of contract, and other claims for unfair trade practice in violation of Section 100.18 of the Wisconsin Statutes, intentional interference with contractual relations, and

violations of the Lanham Act, 15 U.S.C. § 1125. Currently before the Court is MTI's motion for judgment on the pleadings as to all but one of MLS's claims against it. For the reasons that follow, MTI's motion will be granted in part.

**STANDARD OF REVIEW**

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to seek judgment on the pleadings after the pleadings have closed. *Buchanan–Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). A motion under Rule 12(c) is reviewed under the same standard employed when reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Id.* (citing *Pisciotta v. Old Nat'l. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007)). A motion for judgment on the pleadings will not be granted where there are unresolved issues of material fact. *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). However, we need not ignore facts set forth in the Complaint that undermine the non-moving party's claim or give weight to unsupported conclusions of law. *Buchanan-Moore*, 570 F.3d at 827.

**DISCUSSION**

**1. Count III - Unfair Trade Practice Pursuant to Wis. Stat. § 100.18**

MLS concedes in its response brief to MTI's motion that Wis. Stat. § 100.18 is not applicable to the factual circumstances of this action. (Def. Resp. Br., ECF No. 70 at 1-2.) Accordingly, MTI's motion for judgment on the pleadings will be granted as to Count III of MLS's Counterclaim.

2

**2. Count IV - Intentional Interference with Contractual Relationship**

MLS alleges that MTI made representations to current and potential customers in MLS's geographic sales territory that MLS was no longer an approved MTI dealer of its industrial lift equipment and that customers should not do business with MLS. (Def. Countercl., ECF No. 15 ¶¶ 29-32.) These communications with its current and potential customers, MLS argues, are sufficient to state a claim for tortious interference with contractual relationships.

Under Wisconsin law, the elements of tortious interference with contractual relationship are (1) the plaintiff had a current or prospective contractual relationship with a third party, (2) the defendant interfered with that contractual relationship, (3) the interference was intentional, (4) a causal connection exists between the defendant's interference and the plaintiff's damages, and (5) the defendant was not justified or privileged to interfere. *Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th Cir. 1994); *see also Dorr v. Sacred Heart Hosp.*, 228 Wis. 2d 425, 456, 597 N.W.2d 462, 478 (Ct. App. 1999). MLS claims that MTI's statements to its existing and prospective customers interfered with MLS's contracts and/or future contracts with those customers, thereby causing MLS damages in the form of lost profits from those transactions.

Of course, advising a prospective customer not to do business with a competitor, by itself, is not improper. Indeed, this very advice is implicit in every solicitation: "buy from me, not the other guy." The same point is made by the Restatement:

> One's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors. In order not to hamper competition unduly, the rule stated in this Section entitles one not only to seek to divert business from his competitors generally but also from a particular competitor. And he may seek to do so directly by express inducement as well as indirectly by attractive offers of his own goods or services.

3

RESTATEMENT 2d TORTS, § 768, comment (b) (1979). Even if one is not a competitor with a particular business, telling others to avoid doing business with that business is not by itself actionable. *See N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) (holding that boycott activity that is not itself violent is protected by First Amendment). It is only when the actor employs wrongful means or creates an unlawful restraint of trade that such actions incur liability. *Id.* Thus, in order for MLS's claim to survive, it must allege that MTI did more than simply tell customers not to do business with MLS.

MLS contends that MTI did do something more. MLS claims that MTI told its customers and prospective customers that MLS was no longer MTI's distributor. MLS contends that these statements to its customers and prospective customers informing them that MLS was no longer a MTI distributor were improper because MTI did not properly terminate the distributorship agreement. MLS contends that, in fact, it remains MTI's distributor to this day. By falsely stating that MLS was no longer its distributor, MLS contends that MTI improperly interfered with its contractual relations.

The difficulty with this argument, however, is that under Wisconsin law, "there must be a duty existing independently of the performance of [a] contract for a cause of action in tort to exist." *Landwehr v. Citizens Trust Co.*, 110 Wis.2d 716, 329 N.W.2d 411, 414 (1983), *see also Tatge v. Chambers & Owen, Inc.*, 219 Wis. 2d 99, 579 N.W.2d 217 (1998). Here, whatever duty MTI had to maintain MLS as a distributor arose under its contract with MLS. Apart from its contract, MLS had no right to be considered MTI's distributor, and MTI had no duty to refrain from telling MLS's current or prospective customers that MLS was not its distributor. It thus follows that MLS's remedy for MTI's termination of the distributorship agreement, if any, lies in contract law. *See*

4

*Gillen v. Atalanta Systems, Inc.*, 997 F.2d 280, 285 (7th Cir. 1993) (holding that plaintiff cannot recover in tort for intentional interference with a prospective contractual relation when tort and contract claims are based on the same underlying facts). This makes perfect sense for the simple reason that if MTI did breach the distributorship agreement by terminating MLS, then whatever losses MLS suffered as a result of MTI telling MLS' potential customers that it was no longer MTI's distributor are recoverable as damages for that breach. Adding an interference with contract claim only confuses matters and thereby increases the costs of litigation. Accordingly, MTI's motion for judgment on the pleadings as to Count IV will be granted.

### 3. Count V - Lanham Act Claim

Count V of MLS's Counterclaim alleges that MTI violated the Lanham Act. The Lanham Act prohibits "false or misleading 'commercial advertising or promotion of the nature, characteristics, qualities, or geographic origin of the advertiser's or another person's goods, services, or commercial activities.'" *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999) (quoting 15 U.S.C. § 1125(a)). MLS alleges that MTI violated the Lanham Act by sending letters, advertisements, and making statements to existing and potential customers of MLS indicating that MLS "is no longer a Marine Travelift dealer despite the fact that Marine Travelift has never provided written notice of termination of the Distributor Agreement to Marine Lift Systems." (Countercl., ECF No. 15, ¶ 37.) MLS also alleges that MTI violated the Lanham Act by removing MLS from the listing of its current distributors on its website. (*Id.* ¶ 38.) MLS alleges that these actions by MTI are likely to deceive a substantial set of its potential customers and have in fact diverted customers away from MLS. (*Id.* ¶¶ 40-41.)

To the extent MLS is complaining of MTI's direct communications with particularized customers, i.e., letters and direct statements, no Lanham Act violation is alleged. The Act applies only to advertising, and the Seventh Circuit has described "advertising" as "a form of promotion to anonymous recipients." *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803 (7th Cir. 2001). Furthermore, advertising is "a subset of persuasion and refers to dissemination of prefabricated promotional material." *Id.* at 804 (quoting *Zurich Ins. Co. v. Amcor Sunclipse N. Am.*, 241 F.3d 605, 607 (7th Cir. 2001)). MTI's letters and direct statements to particular customers thus do not constitute violations of the Lanham Act.

MLS notes, however, that its Counterclaim also alleges that MTI made such statements in its advertisements and that MTI failed to list MLS as a distributor on its website. But even if one accepts MLS's conclusory allegations that MTI included such statements in its advertisements, its Lanham Act claim still fails. As noted above, the Lanham Act prohibits "false or misleading commercial advertising." *Hot Wax, Inc.*, 191 F.3d at 819. MTI's statements in its advertising that MLS was no longer a distributor of its products was hardly false or misleading since, as MLS alleges, MTI had "wrongly terminated the Distributor Agreement . . ." and "refused to honor the terms of the Distributor Agreement." (Countercl., ECF No. 15, ¶¶ 7-8.) MTI may have breached its distributorship agreement with MLS in stating that MLS was not its distributor, but it surely did not mislead the public. In fact, it would have been false or misleading for MTI to state that MLS was still its distributor after it had terminated the agreement. This is true regardless of whether MTI's termination of the agreement amounts to a breach or not. By alleging that MTI had terminated the distributorship agreement, MLS has plead itself out of court on its Lanham Act claim. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (a plaintiff can plead

6

himself out of court by pleading facts that show he has no legal claim). Accordingly, MTI's motion will also be granted as to MLS's Lanham Act claim, Count V.

**4. Count II - Breach of Contract: Expectation Damage Interest**

Lastly, MTI argues that MLS's Count II which asserts a breach of contract for money damages should be dismissed as a "housekeeping matter" because it is simply a repeat of Count I. Both counts are for breach of contract. Count I is entitled "Breach of Contract-Distributorship Agreement," and Count II is entitled "Breach of Contract-Monetary Damages." At argument on an unrelated motion, counsel for MLS explained that Count I seeks prospective damages for MTI's breach of the distributorship agreement, whereas Count II seeks to recover damages due as a commission on a purchase order MLS arranged with North Florida Shipyards, while still acting as MTI's distributor. It appears that the claims, though both for breach of contract, are sufficiently distinct to justify asserting them as separate counts. Dismissal of Count II would not clarify the issues. Accordingly, MTI's motion will be denied as to Count II.

## CONCLUSION

MTI's motion for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is **GRANTED** as to Counts III, IV, and V of MLS's Counterclaim. MTI's motion for judgment as to Count II is **DENIED.**

**SO ORDERED** this __15th__ day of August, 2012.

 s/ William C. Griesbach
William C. Griesbach
United States District Judge