UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARINE TRAVELIFT, INC.,

                Plaintiff,

                                             Case No. 10-CV-001046

    -v-

MARINE LIFT SYSTEMS, INC.,

                Defendant.

## DEFENDANT MARINE LIFT SYSTEM'S
## BRIEF IN SUPPORT OF ITS
## MOTION TO STRIKE PLAINTIFF'S EXPERT DR. CHARLES BREEDEN

## <u>INTRODUCTION</u>

Defendant Marine Lift Systems, Inc., respectfully moves this Court to preclude testimony of Plaintiff Marine Travelift, Inc.'s expert witness Dr. Charles Breeden. Marine Lift Systems moves to strike Dr. Breeden as an expert witness under Rule 702 and 703 because he improperly serves as a mouthpiece for Marine Travelift's own calculated damages, and, relatedly, his testimony is neither based on "sufficient facts or data" nor "the product of reliable principles and methods."

Dr. Breeden offers opinions on plaintiff's alleged economic damages in this matter in the form of future lost profits as well as "lost or stolen" goodwill. Dr. Breeden's opinion is rank with speculation. Dr. Breeden is simply no more than a mouthpiece for the plaintiff speculating on its own damages. Related to that superficial role, Breeden's damages analysis relies on insufficient data, employs, at best, a superficial scrutiny of the data underlying the alleged damages, and involves an outright blindness to contrary evidence and obvious alternative

explanations for plaintiff's alleged economic damages. In the end, Dr. Breeden's methodology is hopelessly flawed and entirely speculative.

For those reasons, and as discussed fully below, Marine Lift Systems respectfully moves this Court for an order striking plaintiff's expert Dr. Charles Breeden as an expert witness and all of his associated opinions under Fed. R. Evid. 702 and 703.

## BACKGROUND

For the benefit of understanding the present motion, some pertinent background information is essential.

**a. Marine Travelift's Claims.**

The plaintiff Marine Travelift is a Wisconsin corporation that manufactures marine lifts, as well as industrial lift products under the name Shuttlelift. Generally, marine lift products are used in marinas and ports and concern equipment to carry, push, pull, lift, stack or tier boats, especially large marine vessels. Marine lift products include a number of different styles of lifts, such as fork-lift types of boat lifts, cranes or gantry-style hoist equipment. Industrial lift products, on the other hand, cater to different markets, and concern trucks used to carry, push, pull, lift, stack or tier industrial materials such as large pipes, beams, cargo or other similar material. Marine Travelift is not the only manufacturer of marine and industrial lifts, as it has a numbers of competitors in the U.S. and international markets. *See generally* Harken Decl. ¶3, Ex. A, Kerwin Dep., at 115:1-116:9.

The defendant Marine Lift Systems is a Florida corporation. By contract, Marine Lift Systems operates as a distributor of Marine Travelift's marine lift products in Georgia and the northern portions of Florida. Marine Lift Systems has operated as Marine Travelift's distributor since approximately 2003. Relevant to the current action, Marine Lift Systems entered into

another distributor agreement with MLS in 2005. That distributor agreement was later superseded by a 2007 distributor agreement between the two parties.

Marine Travelift initially filed this action against Marine Lift Systems and others in March 2010. *Marine Travelift v. Mansell. et al.*, No. 10–C–0238 (E.D. Wis. 2010). That complaint involved actions against the companies Marine Lift Systems, and Industrial Mobile Cranes (IMC) as well as Gary Mansell (Marine Lift System's president) personally. *See Marine Travelift v. Mansell, et al.*, 2010 WL 4690991, *1 (E.D. Wis. 2010). Similar to the current action, Marine Travelift alleged in that prior complaint that the defendants misappropriated its trade secrets and confidential and proprietary business information. *Id.*

That case was dismissed. *Id.*, at *2. On the defendants' motion, the court determined that it did not have jurisdiction over IMC and Gary Mansell personally, and, consequently, venue was also improper. *Id.* In so deciding, the court noted that it had jurisdiction only over Marine Lift Systems pursuant to the forum selection clause in the Marine Travelift's distributor agreement with Marine Lift Systems. *Id.* IMC and Gary Mansell were not parties to that distributor agreement. *Id.*

Ten days after that case was dismissed, Marine Travelift filed the current lawsuit in this Court in November 2010. *Marine Travelift v. Marine Lift Systems*, No. 10–C–1046 (E.D. Wis. 2010) [Dkt. 1]. This time, only Marine Lift Systems was named as a defendant. In Marine Travelift's latest amended complaint filed in May 2011, it asserts seven causes of action against defendant: Breach of Contract, Misappropriation of Trade Secret Information, Misappropriation of Confidential and Proprietary Information, Unfair Competition, Tortious Interference with Contractual Relationships, Unjust Enrichment/Misappropriation of Business Value, and For Accounting, Constructive Trust, Declaratory Judgment and Injunctive Relief. Amend. Compl.

3

[Dkt. 16]. Identical to its initial lawsuit filed in March 2010, each cause of action centers around one general allegation—that Marine Lift Systems misappropriated Marine Travelift's confidential and proprietary business and trade secret information. *See* id. In response to discovery attempting to understand the basis for the complaint, Marine Travelift claims a laundry list of vague trade secrets and confidential business information Marine Lift Systems was privy to and allegedly misappropriated, including: "customer information," "proprietary pricing," "sales and marketing information," "machine designs," "drawings and general arrangements," "patents," "parts information and books," "specification sheets," "brochures," "business information," "dealer meeting information," "assembly process," and "financial information and supplier information." *See* Harken Decl., ¶4, Ex. B, Pl. Resp. Interrog. No. 45.

Marine Travelift claims "irreparable damage" to its business, lost revenues and profits, and loss of business reputation. Am. Compl.; Harken Decl., ¶5, Ex. C, Pl. Initial Disclosures, at 3. As part of its claims, Marine Travelift also seeks to disgorge Marine Lift Systems of any allegedly ill-gotten profits. Am. Compl.

**b. Dr. Breeden's Damages Report.**


### [REDACTED PURSUANT TO PROTECTIVE ORDER

### AND PLAINTIFF'S DESIGNATION]

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

**ARGUMENT**

Defendant Marine Lift Systems now moves to strike Dr. Breeden as an expert witness and all of his associated opinions under Fed. R. Evid. 702 and 703. As an initial matter, this motion does not challenge Dr. Breeden's qualifications and experience in the field of forensic economics generally. However, simply because Dr. Breeden may be qualified to offer the opinions as he does here, he "cannot waltz into the courtroom and render opinions unless the opinions are based on some recognized scientific method and are reliable." *Clark v. Takota Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999). Marine Lift Systems moves to strike Dr. Breeden as an expert witness under Rule 702 and 703 because he improperly serves as a mouthpiece for Marine Travelift's own calculated damages, and, relatedly, his testimony is neither based on "sufficient facts or data" nor "the product of reliable principles and methods."

A court's "basic gatekeeping obligation" is to determine whether an expert's opinion is based upon sound, reliable theory, or whether it constitutes speculation. *Kuhmo Tire v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589-90 (1993). An expert opinion constitutes speculation when it "is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 242 (1993). Experts must have a reasonable factual basis for their testimony, the testimony must be based on reliable methods, and the testimony must be relevant to the facts at issue. Fed. R. Evid. 702 and 703; *General Electric Co. v. Joiner,* 522 U.S. 136, 146 (1997); *Daubert*, 509 U.S. at 589. The proponent of the expert evidence bears the burden of proof as to the reliability of the evidence, and must prove the testimony's reliability by a

Case 1:10-cv-01046-WCG   Filed 02/18/13   Page 7 of 26   Document 126

preponderance of the evidence. *Bourjaily v. United States*, 483 U.S. 171 (1987); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009).

Here, Dr. Breeden's opinion is rank with speculation. Dr. Breeden is simply no more than a mouthpiece for the plaintiff speculating on its own damages. Related to that superficial role, Breeden's damages analysis relies on insufficient data, employs, at best, a superficial scrutiny of the data underlying the alleged damages, and involves an outright blindness to contrary evidence and obvious alternative explanations for plaintiff's alleged economic damages. In the end, Dr. Breeden's methodology hopeless flawed and entirely speculative.

**Dr. Breeden's Opinion on Damages for Lost or Stolen Goodwill**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

<u>**Dr. Breeden's Opinion on Future Lost Profits**</u>

I.   **Dr. Breeden improperly serves as a mouthpiece for the plaintiff speculating on its own damages.**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

Not surprisingly, district courts have excluded expert opinions where the expert failed to conduct any independent research to determine the reliability of assumptions and data used in calculating economic damages. *See, e.g., Fail-Safe, LLC v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 888 (E.D. Wis. 2010) (*citing Lyman v. St Jude Med. S.C. Inc.*, 580 F. Supp. 2d. 719 (E.D. Wis. 2008); *TK-7 Corp. v. Estate of Barbouti,* 993 F.2d 722 (10th Cir. 1993); *JRL Enterprises, Inc. v. Procorp Associates, Inc.,* 2003 WL 21284020 (E.D. La. 2003); *JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.,* 1998 WL 175888, at *7-8 (E.D. Pa. 1998). As this Court and others have made clear, it is not enough to rely solely on the calculations or assumptions of others. *Id.*; *Ariens Co. v. Woods Equipment Co.*, 2006 WL 25979, *6 (E.D. Wis. 2006). Perhaps that rule is most apt where, as here, the very calculations and assumptions that a plaintiff's expert solely relies on to opine on plaintiff's damages is from the plaintiff itself. In a case analogous to this one, in *JRL Enterprises, Inc. v. Procorp Associates, Inc.,* the court excluded expert testimony on

the grounds that the expert performed no independent investigation to verify the reasonableness or accuracy of the projections given to him by the plaintiff's executives. *JRL Enterprises,* 2003 WL 21284020*,* at *5, 7. The court found that this failure established that the expert's calculations could not be evaluated for accuracy. *Id.*, at *7. Without first verifying the reliability of the assumptions given to an expert, calculations are nothing more than "than an exercise in arithmetic based on inherently unreliable values." *Id.*

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

## II.  Dr. Breeden's Opinions are neither Relevant nor Reliable.

Setting aside the fact that Dr. Breeden did not actually conduct any lost profits analysis in this matter, the future loss profits analysis as part of his expert opinion is, in the end, hopelessly flawed.  It is well-settled law that an expert must have a reasonable factual basis for their testimony, the testimony must be based on reliable methods, and the testimony must be relevant to the facts at issue.  Fed. R. Evid. 702 and 703; *General Electric Co. v. Joiner,* 522 U.S. 136, 146 (1997); *Daubert*, 509 U.S. at 589.  Certainly, Marine Travelift's damages estimate ranging from $563,833 to $4,085,000—an approximate 735% difference in that range—indicates that something is amiss in the factual basis and methodology used in future loss profits calculation.

That said, the focus of Rule 702 and 703 is on the methodology, not the conclusion. *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003) (*quoting Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000)).  As partly indicated above and discussed in further detail below, there simply is little, if any, factual basis, reliable methods, or relevancy associated with Dr. Breeden's opinions in this matter.

  a.  **Dr. Breeden's Opinions are not relevant because he can neither aver to the accuracy of the damages calculations to a reasonable degree of certainty nor has any meaningful knowledge of what actually caused the alleged hundreds of thousands to millions of dollars in damages.**

## [REDACTED PURSUANT TO PROTECTIVE ORDER

## AND PLAINTIFF'S DESIGNATION]

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

b. **Dr. Breeden's damages analysis is not reliable because he relies on insufficient data, employs, at best, a superficial scrutiny of the data underlying the alleged damages, and involves an outright blindness to contrary evidence and obvious alternative explanations for plaintiff's alleged economic damages.**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

**[REDACTED PURSUANT TO PROTECTIVE ORDER**

**AND PLAINTIFF'S DESIGNATION]**

The case law is clear in this respect: when the expert fails to consider reasonable (indeed obvious) alternative explanations, the expert's opinion is properly excluded as unreliable. As one court explained, an expert's failure to consider or account for obvious alternative explanations does not properly connect the facts to the asserted conclusion and constitutes an "inspired guess." *Group Health Plan, Inc. v. Philip Morris, Inc.*, 188 F. Supp. 2d 1122, 1133-34 (D. Minn. 2002); *see also Blue Cross and Blue Shield United of Wisconsin v. Marshfield Clinic,* 152 F.3d 588, 593 (7th Cir. 1998) (excluding expert testimony because the experts "attribute the entire difference between the prices […] to the division of markets, with no correction for any other factor except differences in the treatment mix. Statistical studies that fail to correct for salient factors, not attributable to the defendant's misconduct, that may have caused the harm of which the plaintiff is complaining do not provide a rational basis for a judgment"); *Fishman Transducers, Inc. v. Paul,* 684 F.3d 187, 195 (1st Cir. 2012) (affirming exclusion of expert testimony suggesting decline in sales because expert failed to provide "information regarding the reasons that Fishman's customers suffered declining retail sales, or why it should be supposed that [defendant's] infringement had anything to do with this decline . . . [plaintiff's expert] does not address the possibility that Fishman's decline in sales was merely an ordinary year-to-year

fluctuation"); *Claar v. Burlington N.R.R.,* 29 F.3d 499 (9th Cir. 1994) (excluding testimony where the expert failed to consider other obvious causes for the plaintiff's condition).

A recent case from the Northern District of Illinois is instructive. In *Victory Records, Inc. v. Virgin Records America, Inc.*, 2011 WL 382743 (N.D. Ill. 2011), a damages expert was proffered "to testify regarding the profits Victory allegedly lost" on record albums. The expert sought to testify that "the decline in sales . . . was so substantial that it cannot be explained by general marketing trends in the industry . . . [i]t can only be attributable to the actions taken by Hawthorne Heights after the wrongful intervention of Virgin." *Id.* at 5. As with Dr. Breeden, the *Victory* expert did "not simply assume causation; rather, causation is part and parcel of his opinion." *Id.* Just as with Dr. Breeden, the proffered expert in *Victory* failed to evaluate whether other factors "in addition to or instead of [defendant's] alleged misconduct—caused the second album to underperform." *Id* at *6. Accordingly, the court there precluded the expert from testifying for failure "to consider obvious alternative explanations," finding that such a failure meant that the expert "cannot testify with the reliability demanded by Rule 702." *Id.*

Dr. Breeden failed to consider salient elements that could explain and contribute to plaintiff's alleged lost profits. Due to this significant failure in his analysis, Dr. Breeden should not be permitted to tell the trier of fact that the *only* reason Marine Travelift's lost profits was because of Marine Lift Systems' actions (whatever those may be). Ultimately, insufficient data, superficial analysis of data, and outright blindness to contrary evidence and obvious alternative explanations make Dr. Breeden's loss profit methodology hopeless flawed and entirely speculative.

## <u>CONCLUSION</u>

For those reasons, Marine Lift Systems respectfully moves this Court for an order striking plaintiff's expert Dr. Charles Breeden as an expert witness and all of his associated opinions under Fed. R. Evid. 702 and 703.


Dated this 18th day of February, 2013,

KASDORF, LEWIS & SWIETLIK, S.C.
Attorney for Defendant Marine Lift Systems, Inc.

By:___/s/ Nicholas D. Harken_____
        Thomas A. Cabush
        State Bar No.:  1019433
        tcabush@kasdorf.com
        Nicholas D. Harken
        State Bar No.:  1068063
        nharken@kasdorf.com


P.O. Address:
One Park Plaza
11270 West Park Place, Ste. 500
Milwaukee, WI  53224
Phone: 414-577-4000
Fax:    414-577-4400