UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARINE TRAVELIFT, INC.,

        Plaintiff,

v.                                                  Case No. 10-C-1046

MARINE LIFT SYSTEMS, INC.,

        Defendant.

**ORDER GRANTING MOTION FOR LEAVE TO CONTINUE DISCOVERY**

     Plaintiff Marine Travelift, Inc. (MTI) requests leave, pursuant to Federal Rule of Civil Procedure 30(a)(2)(ii), to reconvene depositions of several witnesses. Marine Travelift seeks to redepose defendant Marine Lift Systems, Inc.'s (MLS) president, Gary Mansell, as well as Martin Flaska and Robert Miller, two representatives from non-party Hoist Liftruck Mfg., Inc. (Hoist). MTI also requests leave to depose John Kern, another Hoist employee. Discovery in the case closed on November 30, 2012, but MTI contends its requests to continue the depositions is necessitated by MTI's late and sanctionable disclosure of previously requested documents. MTI has already been able to redepose Mansell. Thus, that aspect of MTI's motion is moot. I turn now to MTI's request for leave to redepose Flaska and Miller and to allow the deposition of Kern.

     On March 15, 2013, the court held that in responding to MTI's requests to produce, MLS was required to produce not only documents in its own files, but also those under the control of its president, Gary Mansell. Mansell was the president of not only MLS, but also Industrial Mobile Cranes, Inc., and Tampa Forklift, Inc., and he maintained records for his three companies in the

same office and on the same computer. MLS had argued that it had produced all of MLS's documents responsive to MTI's requests, but had no obligation to produce records of the other two entities operated by Mansell that might be responsive. The court ruled otherwise, but agreed with MLS that MTI's requests were overly broad and directed the parties to confer with each other in an attempt to reach agreement on what should be produced. As a result of the court's ruling and, perhaps in response to discovery requests in the related litigation pending in Florida, MLS produced another 711 documents. MTI contends that these documents contain important information relevant to its claims that should have been produced earlier. MTI contends that because MLS did not produce them until after the depositions of Flaska and Miller had been completed and discovery had closed, it should be allowed to conduct further discovery related to the documents at this time at MLS's expense.

It is worth noting that from the beginning, this case has been bedeviled by the uncertainty of the distributorship agreement between the parties and the vagueness of the allegations of the complaint. Although MTI contends that the court need not resolve the parties' disputes over the scope of the agreement in order to decide the instant motion, the court is convinced that the question of whether the information MTI seeks is discoverable is directly dependent on the scope of the distributorship agreement. For example, MTI has focused much of its discovery efforts on any contract MLS has had with MTI's competitors on the assumption that MLS was MTI's exclusive dealer under the agreement. (Interrogatory No. 8, ECF No. 112-8.) MLS, on the other hand, contends that the agreement was non-exclusive and that it was free to sell competitor's products under the agreement. MTI also seeks information related to sales by MLS and Mansell's other companies of not only marine lifts, but also industrial lifts, notwithstanding MLS' contention that

2

the distributorship agreement relates only to marine lifts. If MLS' construction of the agreement is correct, MTI's requests are clearly overly broad, and the proposed depositions are unnecessary.

At the court's direction, MTI and MLS addressed the exclusivity of the Agreement in their briefings on MLS's motion for summary judgment. (*See* ECF Nos. 204 & 215.) The court therefore turns to that issue now.

**A. Distributorship Agreement**

MTI and MLS executed the Distributor Agreement on September 26, 2007 (hereinafter the "Agreement"). It is undisputed that the Agreement granted MLS a non-exclusive distributorship that gave MLS the non-exclusive right to purchase and sell MTI's marine lift equipment in its sales territory. (Pl.'s Response Findings of Fact ¶ 19, ECF No. 205.) MLS was also prohibited by the Agreement from servicing competing manufacturers' products. The Agreement contains a forum-selection provision and a choice-of-law clause subjecting MLS to the jurisdiction and law of Wisconsin. The Agreement prevented MLS from availing itself of Wisconsin's fair dealership law. (*Id.*) MTI contends that the Agreement also precluded MLS from selling competitors' products. In contrast, MLS interprets the contract to allow competition. The following provisions of the agreement are relevant to the court's interpretation of the Agreement regarding whether MLS may sell competitors' products.

> **I. GRANT OF DISTRIBUTORSHIP.** [MTI] agrees to sell to [MLS] the Equipment and [MTI] hereby grants [MLS] the non-exclusive right to purchase the Equipment from [MTI] and to resell the Equipment in and to the Territory and/or Accounts described in Addendum A attached hereto, on the terms set forth herein.
>
> . . .
>
> [MLS] expressly acknowledges that it is [MTI's] non-exclusive distributor and that [MTI] may have appointed or may appoint other distributors for the resale of Equipment in

3

geographic areas inside and/or outside the Territory and to Accounts listed and/or not listed on attached Addendum A. [MTI] specifically reserves the right to sell its Equipment direct to any Local, State or Federal Government, any branch or agency thereof, and to any contractor who may supply equipment or services thereto. In addition, [MTI] reserves the right to sell directly to customers deemed to be covered under the definition of "Corporate Sales" as defined in Addendum C attached hereto or as otherwise modified or altered from time to time by [MTI].

**II. DISTRIBUTOR'S DUTIES: SALES AND SERVICE.** Throughout the term of this Agreement, [MLS] shall:

A. use its best efforts to promote, sell and service the [MTI] Equipment within the Territory and/or Accounts and abide by and enforce [MTI's] policies as they are communicated from time to time;

B. devote such time as is required by [MTI] and as may be changed, altered or modified by [MTI] from time to time for the purpose of promoting, selling and servicing the Equipment;

C. conduct business in its own name . . . and maintain an efficient sales and service organization adequate for the needs of the Territory and/or Accounts;

. . .

F. service promptly, efficiently and accurately, utilizing only genuine replacement parts from [MTI] or a local source approved by [MTI] whenever such part replacement is necessary, all Equipment in use in the Territory and/or by the Accounts and give all necessary counsel, advice and instructions to [MLS's] customers in the proper operation and maintenance of the Equipment;

. . .

K. maintain the confidentiality of all [MTI's] trade secrets and proprietary information it possesses;

L. promptly, accurately and efficiently perform all additional and/or specific requirements contained in the Dealer Bulletins, and Dealer Requirements attached hereto as Addendum C, or as modified from time to time by Company.

Addendum C sets forth a number of "Sales Requirements" and "Service Requirements" for MLS.

**Sales Requirements:**

1. [MLS] must have at least one qualified sales person who spends a majority of their time on [MTI's] product line.

. . .

9. [MTI is] responsible to read, adhere to, and conform to all [MTI] issued bulletins and official notifications.

(ECF No. 16-1.) Notably missing from the Agreement is any provision expressly stating that MLS may not sell marine lifts manufactured or sold by competitors of MTI.

MTI maintains that the court should infer from the best-efforts clause that the contract prohibited MLS from selling a competitor's products. However, courts should be reluctant to infer significant limitations on the rights of contracting parties that are not made express in the agreement signed by the parties. *Huntoon v. Capozza*, 57 Wis. 2d 447, 461 & n.22, 204 N.W.2d 649 (1973) ("[I]mportant contractual provisions are not ordinarily left to implication."); *see also Thorn Wire Co. v. Washburn & Moen Co.*, 159 U.S. 423, 450 (1895) (holding that a licensee's agreement to use "reasonable and diligent efforts" to promote a barbed wire product did not impose an obligation not to sell barbed wire products under a competitive patent and that a restrictive covenant not to compete could not be implied from the language used in the contract); *Polyglycoat Corp. v. C.P.C. Distributors, Inc.*, 534 F. Supp. 200 (D.C.N.Y. 1982) (stating that "in the absence of a specific negative covenant not to compete, an exclusive distributor's decision to market a competing brand is not a per se violation of 'best efforts'").

By itself, a best-efforts clause does not require exclusive efforts. *See Autotech Technologies Ltd. P'ship v. Automationdirect.com, Inc.*, 249 F.R.D. 530, 534 (N.D. Ill. 2008) ("[B]est efforts does not mean exclusive efforts"); *see also Joyce Beverages of New York, Inc. v. Royal Crown Cola Co.*,

5

555 F. Supp. 271, 275 (D.C.N.Y. 1983) ("A best efforts clause is not *per se* breached by a mere undertaking of a competitive product line."); *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Pub. Co.*, 30 N.Y.2d 34, 45, 281 N.E.2d 142 (1972) (holding that publisher contract containing a best-efforts clause did not foreclose publisher from "issu[ing] books on the same subject, to negotiate with and pay authors to write such books and to promote them fully according to the publisher's economic interests, even though those later publications adversely affect the contracting author's sales"). Furthermore, the Agreement only required MLS to have a designated person who would devote the majority of his or her time to selling MTI's products. (Agreement Addendum C 1.) Thus, the Agreement itself explicitly did not require exclusive efforts.

In the absence of any express provision to the contrary, MLS was not precluded from selling competitors' products under the Agreement even though MLS was obligated to make best efforts to sell MTI's products. This court cannot rewrite the agreement to include such an essential term. *See Levy v. Levy*, 130 Wis. 2d 523, 533, 388 N.W.2d 170, 174-74 (1986) ("In the guise of construing a contract, courts cannot insert what has been omitted or rewrite a contract made by the parties."). It is true, however, that where a party promising to use best efforts engages in competitive activity adverse to the promisee, "there may be a point where that activity is so manifestly harmful . . . as to justify the court in saying there was a breach" of the best-efforts clause. *Van Valkenburgh*, 30 N.Y.2d at 46. The inquiry into whether a breach of the best-efforts clause occurred is one that is at its heart a factual one. *See, e.g., Joyce Beverages*, 555 F. Supp. 271; *Bloor v. Falstaff Brewing Corp.*, 454 F. Supp. 258 (S.D.N.Y. 1978); *Van Valkenburgh*, 30 N.Y.2d 34. To show a breach, MTI would have to prove more than that MLS was willing to sell competitors' products.

**B. Requested Discovery**

As mentioned earlier, discovery has closed. Any modification of the scheduling order concerning discovery deadlines can only be made "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). MTI posits that its need to redepose Flaska and Miller, and to depose Kern was created by MLS's initial failure to produce requested documents and that this circumstance constitutes good cause for allowing additional discovery to occur. MLS maintains that MTI's motion runs afoul of Civil L.R. 37's meet and confer requirement. However, MTI is required by Rule 30, in the absence of a stipulation, to seek leave of the court before redeposing a witness. Moreover, MTI would be required to seek leave to obtain new discovery in any event because discovery has closed. Rule 37's meet and confer requirement does not apply to a request for leave to redepose a witness under Rule 30(a)(2) or a request to modify the scheduling order to allow for further discovery under Rule 16(b).

There were several communications between Mansell and Hoist representatives discussing a dealership arrangement between Hoist and Tampa Forklift. MTI questioned Flaska, Hoist's President, at length about the nature and extent of those discussions. Flaska acknowledged that these discussions explored the possibility of Hoist and Mansell entering into a dealership arrangement for Hoist's marine hoist and industrial lift products. (Flaska Dep. 67:11-17; *see also* Harris Dep. 39:17-40:25.) The dealership agreement between Hoist and Tampa Forklift, dated September 11, 2008, includes several Hoist products including the "Neptune Marina Series," which is a competing marine lift product. The agreement also includes Hoist's "Rubber-tired Gantry Cranes." There is a checkmark immediately adjacent to the "Rubber-tired Gantry Cranes" category.

7

(*See* Ex. A., ECF No. 180.) MTI has not been able to question Flaska about the document outlining this dealership agreement.

The key issue in the case, of course, is whether MLS breached the 2007 Distributor Agreement. MTI alleges that Tampa Forklift and MLS are alter egos of each other and that a dealership arrangement between Hoist and Tampa Forklift to sell a competing marine lift product would constitute a breach of the parties' 2007 Distributor Agreement. The agreement with Hoist includes a "best efforts" clause, which if Tampa is MLS's alter ego, is arguably a breach of MLS's 2007 Agreement with MTI. Given the nature of MTI's claims and the fact that the dealership agreement includes a reference to Hoist's boat lift, a competing product, there are sufficient grounds to allow MTI to redepose Flaska concerning the actual agreement. MLS's contention that the Hoist dealership agreement is irrelevant because it only concerns rubber-tired gantry cranes as evident from the checkmarks on the agreement, is an argument on the scope of the agreement that the court has yet to resolve. Regardless of MLS's legal argument on the scope and construction of the Hoist agreement, MTI is entitled to question Flaska about the nature of the agreement because the testimony is reasonably calculated to lead to the discovery of admissible evidence.

MTI also highlights several emails between Mansell, Flaska, Miller, and Kern. The emails indicate that Mansell disclosed several line drawings and product pricing information of Shuttlelift, and Mansell's commission percentage. (*See* Lyons Decl. Ex. C, ECF No. 177-3 at 1-2.) MTI alleges that the disclosure of Shuttlelift's drawings, pricing information, and his commission percentage constitutes a breach of the Agreement's confidentiality provisions. MLS responds that MTI's construction of the Agreement is erroneous and that these documents referring to gantry cranes are irrelevant to MTI's claims. The proper scope and construction of this aspect of the

8

contract remains a central issue in this case and summary judgment is yet to be decided. Insofar as these documents are relevant to MTI's claims and its construction of the 2007 Distributor Agreement, discovery is warranted. Accordingly, MTI will be granted leave to question Flaska, Miller, and Kern about these emails.

MTI contends that a reconvened deposition of Miller, Hoist's Chief Engineer, is warranted as well by newly produced emails and a $3,000 payment to Miller for "onsite services." (Lyons Decl. Ex. C, ECF No. 177-3 at 12-13.) MTI explains that during Miller's approximately three hour deposition, he stated that he did not know or could not recall certain facts over 100 times. MTI urges that documents containing over a dozen communications between Mansell and Miller warrant another round of questioning. MTI argues that it was not able to question Miller about these documents or afforded an opportunity to refresh his recollection. Because the documents were not previously disclosed to MTI, it will be granted leave reconvene Miller's deposition.

MTI also seeks to depose Kern, who was not disclosed as a witness with knowledge of the events surrounding MTI's claims. MTI contends that MLS failed to disclose Kern as part of its Rule 26(a) disclosures. Kern had contacted Mansell in 2007, stating he was Hoist's sales representative for "all products excluding the marina truck" in the Florida region. He added that "[Flaska] had informed me of a possible deal, and I would like to speak with you in more detail." (*Id.* at 5.) Kern also was involved in negotiating the dealership agreement between Tampa Forklift and Hoist. (Lyons Decl. Ex. C 9, ECF No. 177-3.) The emails MTI highlights do not indicate that MLS's omission of Kern from its Rule 26(a) witness disclosures was unreasonable. The parties' 2007 Distributor Agreement, at least from MLS's point of view, concerned the sale of MTI's marine lift equipment products. And Kern stated that he is not a sales representative for Hoist's marine lift

9

products. However, given MTI's construction of the 2007 Distributorship Agreement to include the protection of Shuttlelift's proprietary information, the emails between Kern and Mansell are relevant to MTI's claims. It is also evident that the negotiations between Hoist and Mansell may have explored a dealership arrangement for both marine and industrial lift equipment. Accordingly, MTI will be allowed to question Kern.

MLS argues that MTI's motion should be denied in any event because this court does not have authority to issue subpoenas to compel Flaska, Miller, or Kern to be deposed because they are located in Illinois and are non-parties. MLS is correct that Flaska, Miller, and Kern are beyond the jurisdiction of this court. However, this court is not issuing an order that these witnesses must be produced for testimony, only that MTI has leave to depose them. MTI will have to take the steps needed to obtain their appearance at the depositions the court has allowed.

Finally, MTI moves for payment of expenses under Rule 37(a)(5). Its request will be denied. Given the fact that the documents at issue relate to ostensibly separate corporations concerning the sale of equipment not covered by the Agreement, MLS's position was substantially justified. Moreover, MLS made clear its position in its previous discovery responses. If anything, the court has been lenient in allowing MTI to pursue them after the close of discovery. Moreover, having now construed the Agreement as non-exclusive as to both MTI and MLS, the relevance of much of the discovery MTI has sought is far less apparent.

## CONCLUSION

MTI's motion (ECF No. 175) for leave to redepose Flaska and Miller is GRANTED. MTI's request for leave to depose Kern is also GRANTED. Discovery is extended for forty-five days after

the date of this order for the limited purpose of deposing these witnesses. Upon completion of discovery, MTI is directed to supplement its response to MLS's motion for summary judgment (ECF No. 135) within 15 days after close of discovery in order to address all issues raised in the motion. MLS may then file a responsive brief within 10 days of MTI's supplemental filing.

    **SO ORDERED** this   8th   day of August, 2013.

                                       s/ William C. Griesbach
                                       William C. Griesbach, Chief Judge
                                       United States District Court

11

Case 1:10-cv-01046-WCG   Filed 08/08/13   Page 11 of 11   Document 220