UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARINE TRAVELIFT, INC.,

    Plaintiff,

v.                                Case No. 10-C-1046

MARINE LIFT SYSTEMS, INC.,

    Defendant.

**DECISION AND ORDER DENYING MOTIONS TO SEAL**

Once again, the matter of sealing certain documents filed in the record comes before the court for resolution. The desire of Marine Travelift, Inc. (MTI), in particular, to maintain documents filed with the court under seal has led to repeated motions that divert the attention of both the court and the parties from the merits of the case to the time-consuming task of determining whether the disclosure of pricing information and marketing forecasts that are more than two years old will unfairly disadvantage MTI in the marketplace. Having considered the motions and the arguments of the parties, the court now concludes that the remaining motions to seal (ECF Nos. 152, 157 & 172) should be denied. In addition, the court now concludes that it was too liberal in partially granting the motion of Defendant Marine Lift Systems, Inc. (MLS) to seal material MTI had designated confidential (ECF No. 128) and now vacates that portion of the order granting it. (ECF No. 194.)

Under Federal Rule of Civil Procedure 26(c)(1)(G), the court may, when good cause is shown, enter an order "requiring that a trade secret or other confidential research, development, or

commercial information not be revealed or be revealed only in a specified way." Materials that enter the court record "that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l, Inc. v. Abbot Laboratories*, 297 F.3d 544, 545 (7th Cir. 2002). Sensitive financial information may be considered a trade secret, constituting good cause for maintaining the information under seal. *See Thermal Design, Inc. v. Guardian Bldg. Prods., Inc.*, No. 08–C–828, 2011 WL 5105490, *2 (E.D. Wis. Oct. 25, 2011); *see also Metavante Corp. v. Emigrant Sav. Bank*, No. 05-CV-1221, 2008 WL 4722336, *9-10 (E.D. Wis. Oct. 24, 2008); *FTC v. OSF Healthcare Sys.*, No. 11 C 50344, 2012 WL 1144620, *3 (N.D. Ill. Apr. 5, 2012). For instance, information related to pricing, distribution, and marketing may constitute a trade secret. *See PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995).

But it is not enough to simply assert that disclosure would place a party at a competitive disadvantage. As the Seventh Circuit explained in *Baxter,* a party seeking such relief must explain how disclosure would cause harm and why the harm predicted warrants secrecy:

> Beyond asserting that the document must be kept confidential because we say so (the "agreement is, by its terms, confidential"), this contends only that disclosure "could ... harm Abbott's competitive position." How? Not explained. Why is this sort of harm (whatever it may be) a legal justification for secrecy in litigation? Not explained.

297 F.3d at 547. The mere fact that a party would prefer to keep its information confidential is not a sufficient reason for sealing it once it is entered into the public record. *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000) ("Many a litigant would prefer that the subject of the case-how much it agreed to pay for the construction of a pipeline, how many tons of

2

coal its plant uses per day, and so on-be kept from the curious (including its business rivals and customers), but the tradition that litigation is open to the public is of very long standing.").

In order to show good cause to file a document or a portion under seal, the party requesting protection must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Baxter Int'l*, 297 F.3d at 548. "Rule 26 of the Federal Rules of Civil Procedure gives courts 'broad latitude to grant protective orders' and equally broad discretion to deny such orders," *F.T.C. v. Payday Financial, LLC*, No. CIV 11-3017-RAL, 2013 WL 368361, * 2 (D.S.D. Jan. 30, 2013) (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard Marcus, FEDERAL PRACTICE & PROCEDURE § 2043 (2010)), and the rule is designed to be "highly flexible," see *Gill v. Gulfstream Park Racing Association*, 399 F.3d 391, 402 (1st Cir. 2005).

Marine Travelift argues that pages 106 to 109 of Kerwin's deposition (ECF No. 138-1) should be maintained under seal because it contains confidential and proprietary business information, including Marine Travelift's pricing, bid and discount information, market analysis, and sales strategy information. Marine Travelift contends that public disclosure of this information would negatively impact its ability to compete in the marketplace. There is nothing within the excerpt from Kerwin's deposition concerning Marine Travelift's pricing, discounts, or market analysis. Instead, it contains Kerwin's discussion of Marine Travelift's general sales strategy concerning its decision whether to offer a customer a discount. For instance, Kerwin states that Marine Travelift may offer a discount to a potential customer if it has knowledge of another bid from a competitor. (Kerwin Dep. 108:21-25, ECF No. 138-1.) Or Marine Travelift may decide to offer a discount for larger dollar purchases. (*Id.* at 106:10-107:13.) The type of sales strategy contained here is generally known and not of a type that can qualify as a trade secret.

3

The exhibits attached to Wood's deposition (ECF No. 138-8) also are not of a type that qualifies as a trade secret. Exhibits 4 and 7 are two price quotations related to the sale of a boat hoist to Skipper Bud's more than two years ago. Marine Travelift argues that the documents contain its proprietary sales and pricing information, discount, and product specification information. MLS counters that this information cannot qualify as a trade secret because Skipper Bud's was not held to a confidentiality agreement when Marine Travelift disclosed the information. The information contained in the price quotations can be readily ascertained from Skipper Bud's. *See Burbank Grease Servs. v. Sokolowski*, 2005 WI App 28, ¶ 22, 693 N.W.2d 89 ("[W]hen there is no such unique or complicated information behind the pricing, the actual price charged does not meet that standard because . . . it can be readily ascertainable from the customers themselves by proper means."), *rev'd on other grounds*, 2006 WI 103, 717 N.W.2d 781; *see also Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1190 (10th Cir. 2009) ("Metals disclosed the quote to Hughes Anderson and openly admits that Hughes Anderson was under no obligation to keep the information confidential. We thus conclude that the district court erred in determining that the quote constituted a trade secret and reverse its judgment in favor of the plaintiffs on this claim."). And the price quotations are not based on unique or complicated information, rather it is based on the price of the unit and any additional options the customer selects. Absent some special circumstances, such as a confidentiality provision in a contract prohibiting the customer from disclosing the price, the information is not confidential. *See Burbank Grease*, 2005 WI App at ¶ 22. Thus, the information contained in the exhibits is not confidential and cannot be maintained under seal.

Marine Travelift contends that page 5 of the Rule 26 expert disclosure summaries provided by Kerwin and Pfeifer (ECF Nos. 162-3 & 162-4) should be maintained under seal because they

4

contain Marine Travelift's sales and discount information and lost profit projections. The disclosures do not contain any specific projected sales or discount information. Instead the disclosures only contain the general range of Marine Travelift's estimated lost profits. This information is not a trade secret and is already contained within the public record. (*See* Def.'s Br. in Supp. of Mot. to Strike 4, ECF No. 202.) Insofar as the disclosure summaries contain general principles of how Marine Travelift projects sales, this information is well known and does not contain any specific or unique method that could be described as a trade secret. Consequently, these documents will also not be maintained under seal.

In its earlier order (ECF No. 194), the court found that MTI had made a sufficient showing to maintain under seal portions of the material addressed in MLS's February 18, 2013 motion (ECF No. 24.) Upon further consideration, however, the court is now convinced that MTI's argument, even as to those portions of the record it requested remain under seal, lacks the kind of detail that *Baxter* requires in order to grant such relief.

In the court's previous order, for example, the court found that MTI had made a sufficient showing at this stage to warrant maintaining under seal several pages of the report of Charles Breeden, MTI's damages expert. Pages 16 to 17 of the report restated MTI's estimated future losses over an eighteen-month period based on its projected sales and assuming it was forced to offer the same discounted sales price it had offered to one of its customers allegedly as a result of MLS's disclosure of confidential pricing information. (ECF No. 127-4.) The information is dated and there is no showing with any specificity as to why the information is confidential and how it would unfairly damage MTI if it were disclosed. To simply say that the pages "contain confidential and proprietary information of MTI which addresses, among other things, lost profit margin projections"

5

(Decl. of Peter Kerwin, ECF No. 158, ¶ 3), does not make it a trade secret. The single sale on which the projected losses were based occurred in April 2011, and the eighteen months covered by the projection is long past. Whatever value the projections might have had for competitors, they are of no use now. Morever, the projections formed the basis of MTI's claim for lost profits, a key component of its claim against MLS until the report was excluded by the court's order of June 28, 2013. (ECF No. 195.) This is not the kind of information that a court should shield from public view.

The same problems exist for the portions of Dr. Breeden's deposition and exhibits thereto that MTI requested remain under seal. The testimony relates to various discounts that MTI provides to its customers depending on a variety of circumstances. There is no suggestion that the customers who benefit from such discounts are not free to disclose them to others, nor is there any explanation as to how the information could be unfairly used against MTI more than two years after the discounts were described. The exhibits state sales figures for 2010 and 2011, and describe other discounts that were offered at the time. No showing has been made as to how the disclosure of this information would unfairly damage MTI or that the customers themselves are barred from disclosing it.

The balance of the material ordered sealed consists of portions of the rebuttal report of Mark Peterson, MLS's expert, and one of the exhibits to the report. In addition to information concerning MTI's gross revenue and sales figures, the material at issue includes the same information that Dr. Breeden relied upon for his opinions, including the single April 2011 sale. Again, nothing offered by MTI explains why this information must be confidential and how it will be unfairly harmed if it is disclosed. *Baxter* requires more.

6

Accordingly, MTI's motions to seal (ECF Nos. 152, 157, & 172) are denied. Further, to the extent that the court's previous order (ECF No. 194) granted MLS's motion to seal (ECF No. 128), it is vacated and that motion is also denied in its entirety.

**SO ORDERED** this   13th   day of August, 2013.

        s/ William C. Griesbach
        William C. Griesbach, Chief Judge
        United States District Court