UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARINE TRAVELIFT, INC.,

        Plaintiff,

v.                                          Case No. 10-C-1046

MARINE LIFT SYSTEMS, INC.,

        Defendant.

**DECISION AND ORDER GRANTING SUMMARY JUDGMENT
ON COUNT II OF DEFENDANT'S COUNTERCLAIM (ECF No. 130)**

Wisconsin-based Plaintiff Marine Travelift, Inc. (MTI) manufactures and sells marine hoist and industrial lift equipment. On September 26, 2007, MTI entered into a non-exclusive Distributor Agreement with Defendant Marine Lift Systems (MLS) of Tampa, Florida. MTI terminated the Distributor Agreement in March 2010, and commenced this action against MLS for breach of contract and various state tort and statutory claims. MLS filed a counterclaim against MTI in which it asserted two claims for breach of contract, as well as claims for unfair trade practices, intentional interference with contractual relations, and violation of the Lanham Act. All but the two breach of contract claims in MLS's counterclaim have been dismissed. Now before the court is MLS's motion for partial summary judgment on the second of its breach of contract claims against MTI.

Count II of MLS's counterclaim arises out of a the sale of a boat hoist manufactured by MTI to North Florida Shipyards, Inc. (NFS). MLS alleges that in 2009 it arranged for the sale of the hoist to NFS at a purchase price of more than $3 million. Unlike the transactions governed by its Distributorship Agreement with MTI, MLS did not purchase the boat hoist from MTI and then sell

it to NFS at a marked-up price. Instead, the parties agreed that MTI would sell the hoist to NFS directly and pay MLS a commission equal to the usual markup. The terms of the NFS sale agreement are set out in a MTI Unit Order Coversheet (UOC). (Harken Decl., Ex. A. ECF No. 132-1.) MTI agreed to pay MLS a commission of $201,359.16, representing 6% of the sale price, plus $25,800 for setup for a total of $227,159.16. MTI was to collect the purchase price from NFS directly in installments and pay MLS upon final payment. The UOC states a "Build Date" of July 25, 2010, and bears the signatures of three MTI officers: Erich Pfeifer, then-Sales Manager of America for MTI, Peter Kerwin, MTI's Chief Financial Officer, and Steve Pfeifer, then-President of MTI. (Def.'s Prop. Findings of Fact (DPFOF) ¶ 6.)

The boat hoist was apparently built and delivered, and it is undisputed that MTI received payment in full from NFS in or around July 2010. It is also undisputed that MTI has not paid any of the money it received from NFS to MLS. (*Id.* ¶¶ 8-9.) Based upon these facts, MLS argues it is entitled to summary judgment on its claim against MTI for breach of the agreement for the NFS boat hoist sale. MLS seeks judgment for not only the $227,159 that MTI agreed to pay as commission on the sale, but also exemplary damages of up to 200% of that amount along with actual costs and attorneys fees pursuant to Section 134.93 of the Wisconsin Statutes. The precise amount of exemplary damages, like the amount of attorneys fees and costs, MLS concedes, cannot be determined on summary judgment. Thus, it seeks only a determination that MTI is liable for the commission and setup fee.

MTI argues in response that MLS's motion should be denied because there are many material issues of fact in dispute. MTI first argues that MLS is not entitled to a commission on the NSF sale under the plain terms of the Franchise Agreement. MTI further argues that MLS failed

2

Case 1:10-cv-01046-WCG Filed 09/30/13 Page 2 of 9 Document 233

to perform the work required of it on the NFS sale, that MLS also breached the Distributorship Agreement with MTI, and that MLS undertook other wrongful acts toward MTI as part of its secret scheme with MTI's competitors to compete with MTI. MTI contends that it is entitled under both the Distributorship Agreement and common law to set off against any amount it may owe MLS losses it sustained as a result of MLS's breach of the Distributor Agreement and other wrongs MLS committed. Finally, MTI argues that MLS is not entitled to exemplary damages and attorneys fees under Section 134.93 of the Wisconsin Statutes because MLS failed to include a claim under Section 134.93 in its counterclaim and the statute does not apply in any event.

For the reasons that follow, the court concludes that MLS's motion for partial summary judgment on Count II of its counterclaim should be granted in part. The court will first address whether MLS is entitled to summary judgment on some or all of the amount stated in the UOC and then determine whether Section 134.93 applies.

**1. MTI Is Liable To MLS On The NFS Sale.**

MTI first argues that MLS is not entitled to a commission on the NFS hoist sale based on the plain terms of the 2007 Distributor Agreement the parties signed. Under the terms of the Distributor Agreement, MTI agreed to sell MLS its equipment and granted MLS a non-exclusive right to re-sell MTI equipment to customers within a specified territory. (Distributor Agreement at 1, ECF No. 16-1.) MLS was to use its best efforts to promote, sell and service MTI equipment for its customers. MTI agreed to sell the equipment to MLS at its current list price less any discounts set forth in an addendum to the Agreement or otherwise agreed between the parties. (*Id.* at 2.) MLS was responsible for paying MTI the amount invoiced by MTI less any allowances for shortages, returns, rebates, discounts and prepaid non-refundable deposits on receipt. (*Id.*) MLS,

3

on the other hand, was to look only to its customer for payment. Article VIII of the Distributor Agreement states:

> EQUIPMENT RESALE AND SERVICE PRICING. [MLS], in its sole discretion, shall establish prices for all equipment resold and services provided to its customers. The differential between [MLS's] net purchase price of the Equipment from [MTI] and the price [MLS] charges its customer for the Equipment, the "markup," in addition to any price charged by [MLS] to its customers for service, shall represent [MLS's] sole compensation under this Agreement. [MLS] expressly acknowledges that it is not entitled to any wages, salary, commissions, bonuses, or any other type of compensation from [MTI] for the solicitation of orders or sale of the Equipment.

(ECF No. 16-1 at 3.) Based on this provision of the Distributor Agreement, MTI argues that MLS is not entitled to a commission.

The simple answer to MTI's argument is that the parties agreed to handle the NFS sale otherwise. In effect, the UOC for the sale to NFS constitutes a separate agreement between the parties. The UOC unambiguously states that MTI agreed to pay MLS a commission of $201,359.16, plus $25,800 for setup, for a total sum of $227,159.16 upon receipt of full payment by NFS. Nothing in the 2007 Distributor Agreement prevents the parties from entering into a separate agreement or modifying the existing Agreement. In fact, the Distributor Agreement contains an integration clause that specifically allows for modification or amendment of the Agreement as long as the modification or amendment is in writing and signed by the parties. The UOC governing the sale to NFS is in writing and signed by representatives of both parties. (*Id.* at 5.) It is therefore binding on the parties. Whether one calls it a commission or a markup, MTI clearly agreed to pay MLS $201,359.16 upon completion of the sale.

MTI next argues that there is a material dispute as to whether MLS fulfilled its obligations in connection with the NFS sale. MTI contends that MLS was responsible for collecting the sale

4

funds from NFS, delivering the purchased equipment, installing the equipment, performing service work on the site, and doing the warranty work on the sale before it was entitled to any payment. (Pl's Prop. Findings of Fact (PPFOF), ¶ 45.) This is simply not true. The UOC does not contain any of these prerequisites to payment. In fact, it unambiguously states "MTI to collect money from customer direct," which expressly contradicts MTI's assertion that MLS was responsible for collecting the funds from NFS. (ECF No. 132-1 at 2.) The UOC also includes a schedule of installment payments by NFS with the balance due five days before shipping. (*Id.*) It then states that MTI was to "[c]redit Marine Lift Systems account $227,159.16 upon final payment." (*Id*.) Thus, the UOC expressly provides that MLS was to receive the $227,159.16 before it would have been possible for MLS to ship, install, or service any equipment.

This is not to say that MLS was not expected to perform additional work in connection with the sale of the hoist to NFS. Included in the total amount MLS was to receive was $25,800 for set up. MLS concedes that it did not perform the setup work for the boat hoist purchased by NFS, but argues that MTI prevented it from performing this work. MLS notes that as early as March 2010, more than three months before the hoist was to be delivered, MTI terminated the Distributorship Agreement with MLS and was telling customers that MLS would no longer be performing sales and service work on MTI equipment. MTI, on the other hand, contends it was justified in terminating its distributorship with MLS, because MLS had breached the Distributorship Agreement by disclosing confidential trade secret or proprietary information and conspiring to unfairly compete with MTI.

Regardless of whether MTI was justified in terminating the Distributorship Agreement with MLS, it is undisputed that the termination prevented MLS from performing whatever setup work

5

the UOC called for. If the termination of the Distributor Agreement was not justified, MLS may be entitled to recover whatever profit it would have made from performing the work setting up the hoist. That determination must await trial or at least determination of MLS's motion for summary judgment on MTI's claims against it. That motion has not yet been fully briefed. But MLS's failure to perform the setup work would have no bearing on MLS's right to receive the commission MTI agreed to pay MLS on the sale of the hoist. MTI has offered no evidence that MLS was required to do additional work beyond arranging the sale of the hoist to NFS in order to receive the $201,359.16 it agreed to pay MLS as a commission. The commission was conditioned only upon MTI receiving full payment from NFS, which occurred more than three years ago.

MTI also argues that whether MLS is entitled to recover for the NFS sale must await trial because under the terms of the Distributor Agreement, MTI is entitled to offset amounts it may owe by amounts MLS may owe it. Under Article III of the Distributor Agreement, "[MTI] reserves the right to apply any outstanding credits due [MLS] against any indebtedness of [MLS] to [MTI] whether due or to become due . . . ." (ECF No. 16-1 at 2.) Because no determination has been made as to whether MLS is liable on MTI's claims, MTI argues that it is premature to grant summary judgment on MLS's claim against it. In other words, MTI argues that the court should withhold ruling on MLS's claim for its commission to see if MTI prevails on any of its claims so that if it does, we'll know what if any set-off should be made.

This is at best an argument against entering final judgment on MLS's claim, not for denying its motion for summary judgment. In other words, MLS is arguing that as to its claim for its commission from the NFS sale, there are no facts in dispute. There is nothing to ask a jury to decide

6

because it is clear as a matter of law that MTI owes MLS its commission. Whether MLS is liable to MTI on any of the remaining claims is a separate and distinct question.

MTI's argument that it has no liability until and unless all of its claims against MLS are ultimately denied is based on an unreasonable reading of the Distributor Agreement. Article III of the Agreement deals with offsets for amounts due the company as a result of other purchases of equipment by the distributor. MTI has offered no evidence that MLS owes it any amount for equipment purchases it made. Instead, MTI has alleged that MLS is liable to it for disclosing confidential trade secret and other confidential information in breach of the Distributor Agreement. Even at this late stage, however, almost three years after it commenced its lawsuit against MLS, MTI has offered no evidence that it sustained actual losses because of MLS. MTI contends that MLS was attempting to enter into agreements to sell competitors' products and that such conduct constitutes a violation of the Distributor Agreement. Leaving aside the fact that this court has already concluded that the Agreement did not prohibit MLS from selling competing products, as long as it used its best efforts to sell MTI's products, (ECF No. 22 at 3-6), MTI has offered no evidence that it lost sales or revenue as a result of anything MLS did. The court has continued discovery to allow MTI to conduct follow-up depositions on a number of documents that came to light after the close of discovery, and so it remains possible that MTI will obtain evidence that it sustained damages as a result of MLS's breach of the Distributor Agreement or otherwise wrongful conduct. But even if MTI discovers such evidence, it will not create an issue of fact as to its own liability to MLS on Count II of its counterclaim. The mere possibility that MTI will prevail on one of its claims against MLS does not create a triable issue of fact as to MTI's liability to MLS on Count II.

**2. Section 134.93 does not apply.**

MLS also claims that it is entitled to exemplary damages of up to 200% of its commission, as well as actual attorneys fees and costs pursuant to Section 134.93(5) of the Wisconsin Statutes. MTI contends that Section 134.93 does not apply first because MLS failed to plead it in its counterclaim and, second, because under the terms of the Distributor Agreement, MLS is not entitled to a commission.

The fact that MLS did not expressly plead Section 134.93 in its counterclaim does not preclude its application. As long as there is no prejudice to the other party, "[t]he court should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). Here, there is no prejudice to MTI. MLS made clear in its initial disclosures that it intended to seek exemplary damages and attorneys fees under Section 134.93, and MTI does not claim surprise or harm as a result of MLS's failure to expressly include a reference to the statute in its pleadings. Nevertheless, the court concludes that Section 134.93 does not apply here.

Section 134.93 applies to compensation for independent sales representatives. The term "commission" is defined by the statute as "compensation accruing to an independent sales representative for payment by a principal, the rate of which is expressed as a percentage of the dollar amount of orders or sales made by the independent sales representative or as a percentage of the dollar amount of profits generated by the independent sales representative." § 134.93(1)(a). An "independent sales representative" is "a person, other than an insurance agent or broker, who contracts with a principal to solicit wholesale orders and who is compensated, in whole or in part, by commission." § 134.93(1)(b). The statute excludes from the definition of an independent sales

8

representative "a person who places orders or purchases products for the person's own account for resale." § 134.93(1)(b)1.

In this case, it is clear that MLS was not an independent sales representative for MTI. Instead, MLS was a distributor for MTI. Under the terms of the Distributor Agreement, MLS was to purchase MTI equipment and then sell it at a markup to its own customers. With respect to the NFS sale, the parties agreed to structure the transaction differently so that MLS could avoid the costs of insurance it would incur on such a large sale if it took title to the hoist. Thus, MTI agreed to convey title directly to NFS and pay MLS the normal markup as a commission. The agreement to restructure a single sale, however, did not transform the overall relationship between the parties. That relationship was defined by the Distributor Agreement, and under the terms of that Agreement, MLS was to purchase products for its own account for resale. In other words, MLS was not an independent sales representative. *See Kingsley v. Huf N. Am. Auto. Parts Mfg. Corp.*, No. 08-CV-946, 2009 WL 1444136, *3 (E.D. Wis. May 21, 2009) ("Whether § 134.93 applies or not is dictated by the contractual relationship between the parties, not the manner in which the payments between the parties are calculated."). It follows that Section 134.93 does not apply.

Accordingly, on the undisputed facts before it, the court concludes that MTI is liable to MLS for the commission/markup it agreed to pay MLS in connection with the NFS sale. Whether MTI is also liable to MLS for some or all of the setup fee of $25,800 will await trial or further proceedings. Section 134.93 of the Wisconsin Statutes does not apply.

**SO ORDERED** this __28th__ day of September, 2013.

        s/ William C. Griesbach
        William C. Griesbach, Chief Judge
        United States District Court

9