UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARINE TRAVELIFT, INC.,

    Plaintiff,

    v.                                                                   Case No. 10-C-1046

MARINE LIFT SYSTEMS, INC.,

    Defendant.

**ORDER GRANTING IN PART [260] PLAINTIFF'S
MOTION TO EXCLUDE CERTAIN EVIDENCE**

Plaintiff Marine Travelift, Inc. (MTI) moves to preclude Defendant Marine Lift Systems (MLS) from presenting certain evidence at trial. (ECF No. 260.) The court has already granted or otherwise disposed of four of the five motions in limine brought by MTI: Nos. 1, 3, 4 and 5. (*See* ECF No. 284.) The court will now address motion in limine No. 2, which seeks to exclude evidence of any alleged damages, including any testimony by MLS's damages expert John Peters, that MLS may claim it sustained beyond the 30-day notice of termination period set forth in the Agreement, or after approximately April 2010.

The Distributor Agreement (the "Agreement") at issue was terminable "at any time, by either party, for any or no reason," upon 30 days' written notice. (Agreement, Art. XII, ECF No. 16-1.) In early 2010, MTI learned that MLS's owner, Gary Mansell, had been meeting with several of MTI's competitors in the non-marine lift side of MTI's business, criticizing MTI, and encouraging them to enter the marine lift market. On or about March 22, 2010, MTI sent letters to its customers

informing them that "effective today Marine Lift Systems is no longer your Marine Travelift dealer for new unit sales, parts, or service." (*See, e.g.*, MTI March 2010 Letter, Ex. C, ECF No. 227-3.) The letter also informed customers that they would be serviced directly by Marine Travelift. (*Id.*) MTI apparently ceased doing business with MLS around the time MTI sent these letters, but MTI concedes that it did not personally serve upon or mail a 30-day notice of termination to MLS. (Pl's Br. at 4 n.2, ECF No. 261.) MLS asserts that it only discovered MTI's attempts to terminate the Agreement because a third party forwarded one of the letters to a representative of MLS.

Because MTI failed to comply with the notice of termination provision of the Agreement, MLS contends the Agreement has not been terminated and it is entitled to recover as damages the amount of profit it would have earned if MTI had continued to permit it to sell its equipment. MLS has proffered evidence of lost profits approaching $1 million. It is this evidence that is the subject of MTI's motion in limine.

As MLS observes in its opposition, the relief MTI seeks should have been filed as a motion for partial summary judgment instead of a motion in limine on the eve of trial. (Def's Mem. in Opp'n at 5 n.1, ECF No. 276.) Nevertheless, it makes little sense to ignore the issue and proceed to trial without resolving it. MTI did not waive the argument by failing to raise it on summary judgment, and if it is right on the law, it will significantly narrow one of the few issues remaining for trial. The court will therefore proceed to a decision.

MLS's claim against MTI is for breach of contract. Damages awarded for breach of contract "should compensate the injured party for losses necessarily flowing from the breach." *Repinski v. Clintonville Federal Sav. & Loan Ass'n*, 49 Wis.2d 53, 58, 181 N.W.2d 351 (1970) (citing RESTATEMENT (FIRST) OF CONTRACTS § 329 and 5 WILLISTON ON CONTRACTS § 1338 (rev. ed.)).

2

The breach here was not the termination, but the failure to give the notice required under the contract. It therefore follows that MLS's damages are limited to those caused by MTI's failure to provide 30 days' notice. In general, this would mean that the damages would be limited to the profits MLS could have earned in the 30-day period after MTI terminated the Agreement had proper notice been given. *Freiburger v. Texas Co.*, 216 Wis. 546, 257 N.W. 592, 594 (1934) ("When contracts that are terminable at any time on notice are terminated forthwith and without notice, the damages which an aggrieved party may recover are limited to the notice period."). Thus, MLS would not be entitled to recover losses resulting from the termination of the MTI distributorship after thirty days.

It may be that MLS sustained losses after that period because of MTI's breach of the notice provision. For example, if MLS could show that, with 30 days notice, it could have located an alternate source for marine lifts and thereby avoided any disruption of its business, it is conceivable that MTI's liability could continue after the 30-day period. *See Monarch Beverage Co., Inc. v. Tyfield Importers, Inc.*, 823 F.2d 1187, 1190 (7th Cir. 1987) (noting that 30 days provided Monarch with sufficient time to find a substitute product for the Tosti Asti Spumante"). But it does not appear that there were alternative sources of marine lift equipment. That is apparently why Mansell was encouraging others to enter the market. In any event, MLS is not entitled to what it would have earned had its MTI distributorship continued indefinitely.

MLS argues that *Freiburger* is inapposite because its breach of contract claim involves more than just MTI's failure to provide notice. MLS argues that MTI's termination of the Agreement was "wrongful" because MTI "precipitously and prematurely" notified MLS's customers of MTI's decision to terminate its business relationship with MLS. (Def's Mem. in Opp'n at 2-3, ECF No.

3

276.) MLS argues that MTI's failure to provide written notice "constitutes an interference with MLS's right to conduct business under the Agreement which is also a breach of contract, actionable as part of MLS's claim of wrongful termination." (*Id.* at 3.) As a direct consequence of MTI's failure to provide the proper notice, MLS contends that it lost customer relationships that it otherwise could have preserved. (*Id.* at 6-7.) Specifically, MLS claims that the 30-day notice period would have provided opportunities to address its existing customers' service and repair needs on non-MTI products and to "lay the groundwork for expanding its business in new directions." (*Id.* at 7.)

On this point, MLS is correct. If it can show that with the contractually required 30 days notice it could have mitigated its loss resulting from the termination of its MTI distributorship, it may be entitled to damages beyond the 30-day period following the termination of the Agreement. The mere fact that MTI did not provide the notice required by the Agreement is not sufficient to show such damage, however. MLS would presumably have to present evidence of alternative ways in which it could have serviced its customers without MTI equipment and parts, as well as evidence that some portion of its customers would have continued to do business with them. If MLS has such evidence, it is free to present it.

But that does not appear to be the kind of evidence its expert intended to offer. What is barred is evidence of lost profits that would have been earned from the sale of MTI equipment and parts beyond the 30-day period. In other words, the expert report prepared by Peters. (Ex. 1, ECF No. 262.) Using MLS's historical financial statements and general ledger details, Peters estimated that MLS sustained lost profits of $477,648 in 2009-2011 as a result of MTI's improper termination, and he estimated ongoing lost profits in 2012 and beyond to be $388,920 per year. (*Id.* at 3.) These

4

figures account for lost profits on the basis of lost sales of MTI equipment and do not explicitly account for revenues from repairs and servicing products. MTI correctly notes that Peters' data is premised on the incorrect assumption that the Agreement continues even today and into the future.

Accordingly, MTI's motion is granted in that MLS's damages from loss of profits from the sale of MTI equipment is limited to the 30-day period following the termination of the agreement. Since the record does not reflect the precise day MTI terminated the Agreement, that issue remains for trial. If MLS has evidence of other damages caused by MTI's failure to give notice after the 30-day period, it is free to offer it, assuming the evidence has been properly disclosed to MTI.

**SO ORDERED** this   3rd   day of December, 2013.

                                              s/ William C. Griesbach
                                              William C. Griesbach, Chief Judge
                                              United States District Court